UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LORIANN KHANI,

                Plaintiff,

v.

REGENCE BLUESHIELD, et al.,

                Defendants.

C09-1067Z

ORDER

THIS MATTER comes before the Court on defendants' motion for summary judgment, docket no. 43, and motion for protective order, docket no. 30.  Having reviewed all papers filed in support of and in opposition to each motion, the Court enters the following Order.

**Background**

As an employee of the Boeing Company, plaintiff Loriann Khani is eligible for benefits under the Boeing Traditional Medical Plan (the "Boeing Plan"), a defendant in this litigation.  Khani Decl. at ¶ 2 (docket no. 48).  The Boeing Plan "covers treatment, services, and supplies that are deemed preventive or medically necessary."  AR at 688 (docket no. 44-24 at 18).  The Boeing Plan outlines the following criteria for determining whether treatment, services, or supplies are medically necessary:  (i) required for diagnosis or treatment of an "illness, injury, or condition," (ii) consistent with symptoms or diagnosis,

ORDER - 1

(iii) essential to the patient's needs; (iv) consistent with "good medical practice," (v) professionally accepted as "usual, customary, and effective," and (vi) provided on an inpatient basis only when unsafe to offer on an outpatient basis. *Id.* Certain services and supplies are specifically excluded by the Boeing Plan, including "[o]besity services or supplies, *unless approved in advance* as medically necessary by the service representative according to written guidelines." AR at 711 (docket no. 44-25 at 1) (emphasis added).

The service representative for medical and hospital services under the Boeing Plan is defendant Regence BlueShield ("Regence"). AR at 684 (docket no. 44-24 at 14). The written guidelines that Regence must follow in deciding whether to approve obesity services are not contained in the administrative record submitted by Regence, and such written guidelines have not been described or discussed in the parties' briefing. The parties agree, however, that Regence pre-approved obesity services, namely bariatric (gastric bypass) surgery, for plaintiff, which she underwent in February 2006. *See* Khani Decl. at ¶ 2 (docket no. 48). As a result of significant weight loss and a chronic cough, plaintiff developed a large hernia at the site of the surgical incision, as well as infrapannicular rashes, ulcerations, and infections. AR at 516 (docket no. 44-19 at 6).

To address these symptoms, on June 28, 2007, plaintiff had the following procedures: (i) incisional hernia repair; (ii) panniculectomy (removal of excess abdominal fat, skin, and subcutaneous tissue); and (iii) abdominal wall reconstruction. AR at 515 (docket no. 44-19 at 5). The parties agree that the incisional hernia repair was medically necessary and should have been covered under the Boeing Plan. *See* AR at 494 (docket no. 44-18 at 24); AR at 501 (docket no. 44-18 at 31). Regence, however, refused to pre-approve the panniculectomy, concluding that it was primarily cosmetic in nature and did not meet the criteria for medical necessity. AR at 494. As a result, plaintiff prepaid the cost of the panniculectomy, which was $6,000. Khani Decl. at ¶ 6 (docket no. 48).

ORDER - 2

After the surgery, pursuant to Regence's review process, plaintiff submitted a first appeal and a second appeal, both of which are mandatory. <u>See</u> AR at 585 (docket no. 44-21 at 15); <u>see also</u> AR at 612-14, 626-29 (docket no. 44-22 at 2-4, 16-19) (first appeal); AR at 637-42 (docket no. 44-22 at 27-29 & docket no. 44-23 at 1-3) (second appeal). The second appeal was sent for external review by the MAXIMUS Center for Health Dispute Resolution. AR at 639 (docket no. 44-22 at 29); <u>see</u> AR at 585 (docket no. 44-21 at 15) (indicating that a second appeal "may be sent to an independent medical professional with appropriate expertise"). Plaintiff did not pursue a third, voluntary appeal.

In her initial appeal, plaintiff sought reimbursement for the $6,000 she had prepaid for the panniculectomy. Plaintiff did not raise any issue concerning the abdominal wall reconstruction, which Regence had already covered. In its letter dated June 27, 2007, responding to plaintiff's first appeal, Regence indicated that it was "unable to provide coverage for this service," meaning the panniculectomy. AR at 504 (docket no. 44-18 at 34). The June 2007 letter did not mention the abdominal wall reconstruction. <u>See</u> AR at 504-05 (docket no. 44-18 at 34-35). On March 20, 2008, Regence sent a letter to plaintiff indicating that "charges for a complex abdominoplasty were paid in error and will be taken back." AR at 543 (docket no. 44-20 at 3). An abdominoplasty, often called a "tummy tuck," is a generally cosmetic procedure for tightening the abdominal muscles and fascia. <u>See</u> Exh. A to Zubel Decl. (docket no. 37). The operative reports prepared by the surgeons who operated on plaintiff in June 2007 did not use the term abdominoplasty. <u>See</u> AR at 515-18 (report of Keith T. Paige, M.D.) and AR at 519-20 (report of Jeffrey A. Hunter, M.D.) (docket no. 44-19 at 5-10). Dr. Paige's report did, however, specifically refer to a panniculectomy in the section titled "Procedure Performed." AR at 515.

Contemporaneously with the notification to plaintiff, Regence demanded a refund from Virginia Mason Medical Center ("Virginia Mason") in the amount of $4,264.44 for services rendered by Dr. Paige. AR at 541 (docket no. 44-20 at 1). Approximately five and

ORDER - 3

a half months later, on September 8, 2008, Regence notified plaintiff that her second appeal had resulted in a decision not to extend coverage for the "complex abdominoplasty and panniculectomy rendered . . . on June 28, 2007." AR at 556 (docket no. 44-20 at 16). According to plaintiff, rather than just the $4,264.44 demanded by Regence, Virginia Mason actually refunded $14,028.19 to Regence. Khani Decl. at ¶ 12 (docket no. 48). In addition, Virginia Mason reversed the negotiated-rate adjustment of $21,276.45, and then sought payment from plaintiff for the total amount of hospital charges relating to the surgery performed in June 2007, namely $35,304.64. *Id.* Virginia Mason's collection agency has sued plaintiff in state court for this sum, and those proceedings are stayed pending the outcome of this case. *Id.*

**Discussion**

The parties agree that this matter is governed by the Employee Retirement Income Security Program ("ERISA"). Under ERISA, plaintiff is entitled to bring this action to recover benefits due under the terms of the Boeing Plan. *See* ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Defendants Regence and the Boeing Plan seek summary judgment in their favor as to plaintiff's ERISA claim. A party is not entitled to summary judgment unless it demonstrates an absence of genuine dispute of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a) (2010). Defendants have not made the requisite showing.

Under ERISA, a denial of benefits is reviewed under a de novo standard unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *E.g.*, *Montour v. Hartford Life & Accident Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009). The administrator for the Boeing Plan is the Employee Benefit Plans Committee (the "Committee"), which is comprised of Boeing employees who are appointed by the Boeing Company Board of Directors. AR at 740 (docket no. 44-26 at 1). With respect to the Boeing Plan, the Committee "has the exclusive

right, power, and authority, in its sole and absolute discretion, to [a]dminister, apply, construe, and interpret the Plan . . . [and to d]ecide all matters and questions arising in connection with entitlement to benefits." *Id.* The Committee has delegated certain administrative duties and responsibilities to Regence as service representative for medical and hospital services. AR at 741 (docket no. 44-26 at 2). When, as here, the benefit plan grants discretionary authority to the administrator, the denial of benefits is reviewed under an abuse of discretion standard. *E.g.*, *Montour*, 588 F.3d at 629.

The exact contours of the abuse of discretion standard depend on whether and to what degree the plan administrator has a conflict of interest. *Id.* at 629-32. A conflict of interest may be structural, as when the entity that funds an ERISA benefits plan also evaluates claims, or may arise in other ways. *See id.* at 630; *see also Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006) ("This standard applies to the kind of inherent conflict that exists when a plan administrator both administers the plan and funds it, as well as to other forms of conflict."). In the absence of a conflict of interest, judicial review involves a "straightforward application of the abuse of discretion standard," pursuant to which the denial of benefits "can be upheld if it is 'grounded on *any* reasonable basis.'" *Montour*, 588 F.3d at 629 (emphasis in original).

On the other hand, when a conflict of interest exists, it must be considered as one of many relevant factors, including the quality and quantity of the medical evidence, whether the administrator's decision was based on an in-person medical evaluation or paper review of existing records, and whether the independent experts were given "all of the relevant evidence." *Id.* at 630. The conflict of interest is given more or less weight based on the degree to which it appears to have improperly influenced the benefits decision. *Id.* at 631. Put another way, if the circumstances indicate that the conflict of interest might have "tainted the entire administrative decision-making process," the stated reasons for the benefits decision should be viewed with "enhanced skepticism." *Id.*; *see also Abatie*, 458 F.3d at 968

("The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history.  A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record." (citations omitted)).

In this case, defendants have not shown entitlement to summary judgment even under the more deferential standard applied in the absence of a conflict of interest.  In their reply to plaintiff's contention that Virginia Mason refunded all of the amounts paid by Regence, including the costs associated with the incisional hernia repair that Regence concedes should have been covered under the Boeing Plan, defendants assert that Dr. Hunter was paid for performing the incisional hernia repair.  Whether Dr. Hunter was himself paid, however, is not the point.  The question is whether some portion of the hospital charges related to the incisional hernia repair were erroneously refunded to Regence.  Instead of offering a "reasonable basis" for denial of benefits undisputedly owed to plaintiff, defendants merely state that the billing records are not part of the administrative record because they were "not considered by the Plan in evaluating Ms. Khani's claim."  Reply at 4 (docket no. 52).

To the contrary, the administrative record contains Virginia Mason's statement of hospital services dated November 28, 2007, reflecting Regence's payment of $14,028.19, which was subsequently refunded, and a downward adjustment of $21,276.45, which was later reversed.  AR at 529 (docket no. 44-19 at 19).  Among the itemized charges on this statement are "OR services" in the amount of $15,708.00, anesthesia in the amount of $470.00, supplies in the aggregate amount of $12,717.50, and pharmacy or drug costs in the aggregate amount of $812.25.  Defendants fail to provide any basis for associating these

ORDER - 6

expenses solely with the excluded panniculectomy and/or alleged abdominoplasty.  To the extent some portion of these charges were incurred in connection with the incisional hernia repair, defendants cannot establish a proper exercise of their discretion in failing to review or consider the itemized statement or in obtaining and retaining a full refund.  Thus, with respect to plaintiff's ERISA claim, defendants have not established that they are entitled to judgment as a matter of law.

**Conclusion**

For the foregoing reasons, defendants' motion for summary judgment, docket no. 43, is DENIED.  Defendants' motion for protective order, docket no. 30, which seeks to preclude plaintiff from taking a Rule 30(b)(6) deposition, is GRANTED.  As contemplated in *Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999), this matter will be tried to the bench on the administrative record.  *See id.* at 1094-95.  Pursuant to the parties' stipulation, docket no. 50, the mediation deadline is extended to April 15, 2011.  The trial date and the related deadlines for filing motions in limine, trial briefs, proposed findings of fact and conclusions of law, and an agreed pretrial order are STRICKEN.  The pretrial conference is also STRICKEN.  A status conference is SCHEDULED for Thursday, May 12, 2011, at 11:00 a.m.

IT IS SO ORDERED.

The Clerk is directed to send a copy of this Order to all counsel of record.

DATED this 30th day of March, 2011.

Thomas S. Zilly
United States District Judge

ORDER - 7